## UNITED STATES v. KETOORKY.

(Fourth Division. Fairbanks. November 11, 1922.)

No. 2586, Equity.

I. **Searches and Seizures** &#9756;5—**Intoxicating Liquors—Abatement of Nuisances.**

The defendant was the keeper of a public restaurant which occupied the ground floor of the building while he had his residence on the second floor. The United States marshal searched the restaurant premises, having a search warrant

for that purpose, and therein found two bottles thought to contain intoxicating beverage. Defendant filed a motion, based on his affidavit, for the return of the two bottles and contents, alleging that the bottles contained only "near" beer, with alcoholic content of less than one-half of 1 per cent. *Held*, the theory upon which property is redelivered to the defendant upon motion of this kind and the evidence thus suppressed, is that the use of the property by the government in the prosecution would be prejudicial to the defendant, and be productive of incriminating evidence against him, but, according to the defendant's own statement, the evidence of these two bottles and contents would in no way be prejudicial to him, and the motion is denied.

2. **Searches and Seizures** ⚖5—**Intoxicating Liquor—Constitutional Law.**

A thousand bottles of beer, a capping machine, some corks, and a pint bottle of "white-mule" whisky were seized in defendant's restaurant on July 3, by the United States marshal, and on July 10, upon notice to defendant, and hearing, the court made an order that this property be destroyed. On October 28, thereafter, the defendant filed an affidavit and motion for a return of the property to him, showing that the building in which it was seized was his private dwelling house, and because the property was seized in violation of his rights under the Fourth and Fifth Amendments to the Constitution of the United States. *Held*, that property will be returned in such cases only where seasonable application is made; that no application was made in this case within a reasonable time, and the motion is denied for that reason; also that, since the admitted fact is that the property was seized on a search warrant from the public restaurant of defendant, on the lower floor of the building in which defendant's private dwelling was on the floor above, it was not found in defendant's dwelling, but in his place of business, and the motion is denied for both reasons.

3. **Intoxicating Liquors** ⚖8, 132—**Courts—Concurrent Jurisdiction.**

The National Prohibition Act (41 Stat. 305–323), and the Alaska Prohibition Act (39 Stat. 903 [U. S. Comp. St. 1918 U. S. Comp. St. Ann. Supp. 1919, §§ 3643b–3643r]) are both in force in Alaska. Abatta v. United States (C. C. A.) 270 Fed. 735. They are very similar in their provisions and seek to secure much the same object, by much the same means, in much the same way. They are concurrent acts, and the district court has about the same range of power under both. Each act. however, contains within itself adequate and sufficient provisions for its enforcement, and no reference is made in one to the other. They are separate and distinct laws, though both passed by the same Legislature. *Held*, if any action, civil or criminal. is instituted under either of these acts, it must be

begun, pursued, and concluded in accordance with the provisions of the act under which it was instituted without aid from the other. They are concurrent, it is true, but they must not be confused and intermixed in one case.

This is an action for the abatement of a nuisance upon certain premises under the provisions of the National Prohibition Act.

In the original complaint reference was made to both the National Prohibition Act (41 Stat. 305–323) and the Bone Dry Act (39 Stat. 903 [U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, §§ 3643b–3643r]) especially applicable to Alaska, but upon a motion by the defendant all reference to the Bone Dry Act was stricken out of the complaint.

Guy B. Erwin and L. R. Gillette, U. S. Attys., both of Fairbanks.

Harry Pratt, of Fairbanks, for defendant.

CLEGG, District Judge. At this time a motion is made by the defendant for the return of certain property, mentioned as three separate items in the motion, on the ground the seizure was unlawful in each case, and in violation of the constitutional provisions of the Fourth and Fifth Amendments. The matter has been argued and briefs have been submitted on the subject by the opposing parties. The three items of property mentioned in the motion for the suppression of evidence and the return of the property are as follows:

First, two certain bottles which it is claimed in the motion were seized by the United States marshal in the premises sought to be abated, which is a public restaurant. The motion and affidavit of the defendant accompanying it refers to this part of the property, stating that the content of the two bottles was "near" beer containing less than one-half of 1 per cent. of alcohol. The motion of the defendant will be denied as to this item, for the reason that the theory upon which property is redelivered to the defendant upon motions of this kind, and the evidence thereof suppressed, is that the use of the property by the government in the prosecution would be prejudicial to the defendant, and be productive of incriminating evidence against him; but, according to the defendant's own statement, the evidence mentioned in this item is not incrimi-

nating, and would in no way be prejudicial to him, therefore the motion will be denied as to that item.

The second item of property has reference to over 1,000 bottles of beer, together with the capping machine and some corks, and also a pint bottle of "white mule" whisky.

It appears from the records that this case was instituted on the 10th day of July of this year; that on the 3d day of July a search warrant was issued after an affidavit having been filed with the commissioner of the Nenana precinct for a search of the premises described in the complaint, which, as I have said before, is a public restaurant, and that thereupon a search warrant was issued, with a finding of probable cause that a crime had been committed, and the marshal went to the premises in question and found these liquors in the restaurant premises. Thereafter, upon the 10th day of July, at the time this suit was instituted, the then presiding judge of the court, Judge E. E. Ritchie, issued an injunction to prevent the defendant from using the premises in violation of the National Prohibition Act, and at the same time issued an order reciting or decreeing that the property seized upon the search warrant was intoxicating liquor, and also decreeing that it be destroyed by the United States marshal. This order, the records in the case show, was served upon the defendant immediately thereafter, and since that time he has made no motion or application to the court in any way to modify or rescind the order, but has acquiesced in it up to the filing of this motion for the suppression of evidence and the return of the property.

Under the circumstances the motion of the defendant as to this item of property will be denied upon two grounds: First, that the motion at this time comes too late for the reason that in the case of Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, the court said that property would only be returned to the defendant, if the seizure was unlawful, where seasonable application was made therefor. In the case of United States v. O'Dowd (D. C.) 273 Fed. 600, which is an Ohio case, the court there construed the meaning of the word "seasonable," used in that decision of the Supreme Court, and says that it must be seasonable with reference to the time of the alleged seizure, and not, therefore, with reference to the time that the property is sought to be used in evidence. And

in the O'Dowd Case the court says that an application which is made for the return of the property after a lapse of seven months, and the suppression of the evidence, is an unreasonable delay. Following the decision of that court, I hold that under the particular circumstances of this case the delay is unreasonable. The application was first filed here for the suppression of the evidence and the return of the property on October 28th, after, as I have stated before, the defendant had acquiesced in the order of the court denouncing the property seized as intoxicating liquor and ordering it destroyed.

The court also considers on this subdivision the fact that the property to be searched under the search warrant, and this admittedly, was a public restaurant, and that was the only property searched. It is true that in the affidavit of the defendant he says that he occupied the upper portion of this building in which the public restaurant was conducted as a dwelling house, but it does not appear from either the argument of counsel for the defendant or in the affidavit of the defendant that the officers encroached upon that part of the building in which the defendant had his dwelling, and the only part of the building upon which they entered was the public restaurant. Their entry being lawful, their discovery of what the court has heretofore held to have been intoxicating liquor would therefore justify them in seizing any liquors that they found under those conditions. This is the doctrine that is laid down in the case of O'Connor v. United States (D. C.) 281 Fed. 398, in which many cases are cited to justify the holding of the court in that case, including the case of Kathriner v. U. S., 276 Fed. 808, which is a federal case from the Circuit Court of Appeals of this circuit.

With reference to the third item of property mentioned in the motion of defendant, the only information the court has with reference to it is that it was certain property taken from one Docker, who was not shown by the affidavit of the defendant, or the argument of counsel for the defendant, to have had any relation whatever to the defendant in the abatement proceedings; therefore the court cannot see how the defendant is in any way prejudiced by any action of the United States marshal with reference to a third person with whom the defendant has no privity of interest or any connection

whatever, and with reference to the third item of property the motion will also be denied.

Now, in the brief for the government in this case there is a lengthy discussion as to the Bone Dry Act and the National Prohibition Act with reference to search warrants, and I take the occasion at this time to refer to it merely for the purpose of avoiding situations that have occurred in the past, and which will probably arise in the future, unless some definite statement is made by the court of his position in these cases with reference to these two laws.

It is clear from the brief submitted by the government that counsel has an entirely erroneous opinion of what is meant by the term "concurrent," as used by the Circuit Court of Appeals in the opinion in the Abbate Case, 270 Fed. 735, where the court holds that the Bone Dry Act and the National Prohibition Act are concurrent in this territory.

The district attorney seems to contend that by the use of the term "concurrent" it is meant that in any particular case, to enforce either the provisions of the Bone Dry Act or the National Prohibition, these two acts run side by side, and that they can adopt the provisions of either one as occasion may require. The court does not agree with the contention of the government in that regard.

The word "concurrent" means that the two acts operate equally, or coequally, in the territory; but, if an action is instituted upon either one of them, either civilly or criminally, necessarily it should be pursued upon the provisions of either one of them, and it should not be attempted to be pursued upon both. If it were attempted to be pursued by invoking the provisions of both laws, hopeless confusion would result, and the administration of the law would be entirely ineffective. The provisions of both acts contain the very strongest means for their own enforcement. There is no reason, therefore, to step from one act to another in the prosecution of a case which is instituted upon either one of the acts. Each act contains within itself adequate and sufficient means for its enforcement—powerful means.

I do not hold that the principles of the acts are not analogous, or that some of the provisions of the act are not identical; but what I intend to suggest is that the use, or attempted use, of both acts in the enforcement of one particular case,

drawn and instituted upon either one of them, will not be countenanced.

If you are proceeding by the Bone Dry Act, the act applicable to Alaska, section 17 of that act provides specifically when a search warrant may issue. Of course, the act does not refer to any particular search warrant act; but, there being only one in practice and established by law in Alaska at the time of the passage of the Bone Dry Act, necessarily we are confined in the enforcement of the Bone Dry Act to the provisions of the existing search warrant act at the time of the passage of the Bone Dry Act.

But the government is not limited by the special provisions mentioned in the existing search warrant act, because section 17, heretofore referred to, specifically defines when a search warrant may issue.

If you are proceeding by the National Prohibition Act and the issuance of a search warrant thereunder, the National Prohibition Act provides that search warrants shall be issued in the enforcement of it under the provisions of what the counsel for the government in his brief designates as the Espionage Act, or what is sometimes referred to as the National Search Warrant Act, which is the Act of June 15, 1917 (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, §§ 10496¼a–10496¼v).

It has been, in two well-reasoned cases, adjudicated that the provisions of the National Search Warrant Act—that is, the Act of June 15, 1917—applied to the enforcement of the National Prohibition Act. Those cases are Rose v. United States (C. C. A.) 274 Fed. 246, and United States v. Friedman (D. C.) 267 Fed. 856.

I merely mention this matter at this time, so that counsel may understand what view the court takes of this matter, and to prevent difficulty and misunderstandings hereafter. I hope it will be followed, if counsel think there is any wisdom in what I say. It there is not, I am willing to be set right when the matter is brought to my attention.

These briefs may be filed in the case.

The defendant's motion may be overruled.